On the Merits.
The plaintiff claims to have inherited the property in controversy, in common with her brothers and sisters, from her father, Littleton Bailey, who died in 1861, and from her mother, Frances J. Bailey, who [died in 1867, and that she subsequently inherited the interests of her brothers and sisters, all of whom have since died without issue.
To the title she claims by inheritance, she adds that she has acquired by the prescription of thirty years; and in this court she sets up the prescription acquirendi causa of ten years, as possessor in good faith.
She claims to have thus acquired title to a tract of land on the left bank of Red river descending, having a front on said river of twenty arpents, by a depth of forty arpents, which tract of land is known as the Juan de Leon Spanish grant, containing six hundred and eightythrée and 44-100 American acres, and embracing Spanish sections 37 and 38, in township 6 north, of range 4 west; Spanish section 37, in township 6 north, of range 3 west; Spanish sections 45 and 46,_ in township 7 north of range 4 west, and Spanish sections 37 and 39 and 40, in township 7 north, of range 3 west, as per survey made by George S. Walmsby, Deputy United States Surveyor, in 1847 and and 1848, said property being known as Rock Island plantation.
Petitioner represents that the claim of title by which her said parents became the owners of said land is as follows, to-wit: That said land was granted to Juan de Leon, by virtue of an order of survey given by Governor Miro, Spanish Governor at New Orleans, on the 8th of August, 1790, same then being situated in the parish of Natchitoches, as will appear by reference to a certified copy of the report of D. T. Sutton, Register of the Land Office for the district in Louisiana north of Red river, made on 6th of January, 1821, pursuant to an act of Congress of date May 11, 1820; which Spanish grant was, on the 28th day of February, 1823, confirmed as a valid Spanish grant, as against any claim on the part of the United States gov *1089 ernment, and the title of the said Juan de Leon thereto recognized to be good and valid. -
Petitioner further represents that under the treaty by which the United States acquired the territory of Louisiana, tracts of land previously granted to a Spanish subject were permitted to remain the property of such subject, and such Spanish grants were afterward confirmed by an act of Congress, which put at rest any question of their validity.
•Petitioner further represents that the order of the Spanish Governor, Miro, at New Orleans, in 1790, was prior in date to the cession of the territory of Louisiana to the United States in the year 1803.
She then sets out with precision the chain of title whereby her father and his authors acquired the ownership of said Spanish grant, as follows, to-wit: That her father, Littleton Bailey, acquired same from James Bowie and Juan de Leon, on or about the 1st of December, 1832, and January 8, 1836, respectively, by certain acts of sale referred to as of record in the parish of Natchitoches. That Bowie acquired the title which he conveyed from Juan de Leon by an act of sale of date December 15, 1818, likewise duly recorded. That on the 1st of December, 1832, her father conveyed to T. J. Wells an undivided half interest in said property, retaining a mortgage to secure the price, likewise recorded.
That on the 9th of February, 1838, T. J. Wells conveyed same to J. Madison Wells. She further represents that, on the 24th of February, 1838, J. Madison Wells purchased from W. H. T. Bynum the title he had acquired from Andrew Hunt Adams on the 31st of March, 1835, who it appears acquired a title from Juan de Leon on the 26th of March, 1835. She further represents that on the 25th of January, . 1839, J. Madison Wells executed a mortgage on said property in favor of the Oanal Bank, under which same was subsequently sold on the 6th of May, 1848, and at said sale the property was adjudicated to John K. Elgee, and he subsequently conveyed same to J. Madison Wells ia 1859, who, during the same year, conveyed it to the petitioner’s mother, Frances J. Bailey.
She then finally avers that both of said deeds — that is to say, the one from Elgee to Wells, and that from Wells to her mother — were destroyed by the burning of the court house in Rapides parish in 1864.
From the foregoing statement, it is clear that prior to February 23, 1838, plaintiff’s father was full and exclusive owner of the entire *1090 grant, and so remained with respect to an undivided one-half interest until the time of his death — unless his title was divested by the Bynum title. But conceding that, for the argument, and under the statement of plaintiff, the Bynum claim of title passed through the two Wells’ to her mother, and she being the sole heir to the estates of her father and mother, and of her sisters and brother, the entire title was united in her. That in addition she has ten and thirty years’ prescription. This statement appears to be clear, and must become conclusive on the production of the titles.
So much for the grant itself.
Petitioner further avers that in 1889 the defendant, Hyde, took illegal possession of a portion of said tract of land — the portion including Spanish sections 45 and 46, aggregating about one hundred and twenty-nine acres, and refuses to surrender the same, and hence the necessity for this suit; and she accompanies her other demand with one for the value of timber cut and removed, and for the rental value of the cleared land.
This is the real gist of this suit.
Finally, petitioner supports her claim of ownership with the plea of res adjudieata, as follows, viz.:
“Your petitioner further shows that in a suit styled L. Bailey and Wells vs. T. J. Hickman, reported in 12th La. 415, 416, and in a suit styled T. J. Hickman vs. L. Bailey, 9 An. 485, the title of the Juan de Leon grant was in controversy, which causes were decided by the Supreme Court (to which tribunal same had been appealed) in favor of said Bailey, and of his heirs, and she pleads (same) as res adjudieata.”
Substantially, the answer of the defendant, Hyde, is that he is a good faith possessor under a title from M. Ryan, and entitled to fruits and revenues up to date suit was instituted; and he calls Ryan in warranty.
The answer of this warrantor is similar in purport, he claiming under a title from the Hickman brothers, in 1888,' and he calls the Hickmans in warranty.
The latter answer, setting up their title by inheritance from their deceased father, Thomas J. Hickman, who obtained title from the United States; that is to say, by a certificate of entry of the east half of the southeast quarter, section 36, township 7 north, of range 4 west, on the 15th of May, 1835; and by patent, of the southwest *1091 quarter, and west half of the , southeast quarter of same section, township and range, in 1837 — same covering the land in suit.
They further aver that the Juan de Leon grant was never surveyed or located by the United States, and that the United States had not parted with its title at the time the land in controversy was sold to their ancestor; and that without survey and location of the Juan de Leon grant prior to sale to him, it could not be subsequently located so as to divest said ancestor’s acquired rights.
On these pleadings and issues there was judgment in favor of the plaintiff on the question of title, sustaining her plea of res adjudieata, and awarding her judgment for seven hundred and twenty dollars as the rental value of sixty acres of cleared land for a period of three years; and in favor of the defendant for eight hundred dollars for clearing land, and five hundred and thirty-four dollars and ninety cents for the construction of buildings, etc.
There was judgment against each of the warrantors, and from these various decrees the defendant and warrantors have appealed.
In this court the appellee seeks an amendment of the judgment, rejecting defendant’s claim for improvement, on the ground that h is a possessor in bad faith, or that, in the alternative, his claim therefor should be reduced to a reasonable sum.
The judgment of the court below did not award to the plaintiff anything on the score of timber cut and removed; and, as no amendment has been requested on this score, it may be treated as abandoned.
It is, therefore, clear that, in respect to the title, the only question raised on the pleadings is as to which is the better title, the Juan de Leon grant, or the United States Register’s certificate of 1835, and government patent of 1837; and that to this question we must apply the decision of this court relied upon as forming res adjudieata.
But, a question incidental to the discussion of the plea of res adjudieata, is whether the plaintiff has properly connected herself with the title to the Juan de Leon grant; for, otherwise, proof of the plea would be inadmissible.
It appears that there is no written title in the record showing a conveyance of the property from Elgee to J. Madison Wells, and from Wells to the mother of plaintiff, as alleged in the petition.
Plaintiff’s theory in regard to these missing documents is that the originals were destroyed by the burning of the court house at Alex *1092 andria, in 1864; and that she was entitled to offer secondary evidence of their contents. To the offer of the parol evidence of J. M. Wells for that purpose, defendants’ and warrantors’ counsel objected, on the following grounds, .viz.:
“ That it is not the best evidence; that it is not alleged or proved that a copy of the original was not in existence, nor could be obtained. It is not shown that there is no record of this deed in the parish of Natchitoches, in which this land was situated at that time, and where the plaintiff shows all of his other deeds were recorded and where a copy of the deed might have been found,”
The rule of law on this subject is, that “when an instrument in writing, containing obligations which the party wishes to enforce, has been lost, or destroyed by accident or force, evidence may be given of its contents,” etc. R. O. O. 2279. But this article does not place upon the evidence the limitation that is suggested in the exception. Other articles of the Code declare that a copy of an act “ is good proof, and supplies the want of the original,” in case “ the loss of the original be previously proved.” Id. 2269.
The record of an act is likewise receivable in evidence “ on proving the loss of the original,” etc. Id. 2270.
Our conclusion is that neither an examination of the record, nor an effort to find a copy of these two conveyances extant, was a condition precedent to the introduction of parol testimony of their contents; and that the judge a quo properly overruled the objections urged and admitted the evidence — thus completing plaintiff’s connection with the Juan de Leon grant.
On the trial in the lower court, plaintiff offered in evidence certified extracts from the record of the case of T. J. Hickman vs. L. Bailey et al., No. 2808 of the docket of this court, 9 An. 485 — the case plaintiff relies upon as forming res adjudícala — which were objected to by the defendant and warrantors, on the gronnd (1) that the judgment and verdict of the lower court were not plead as res adjudícala, and proof of same is inadmissible; and (2) that the document offered is not a full and complete copy of the aforesaid record, and a part thereof is inadmissible.
These objections were overruled and the testimony admitted, the objectors retaining a bill of exceptions.
We think the judge’s ruling was correct. Inasmuch as the judgment of this court was pleaded as res adjudícala, it is evident that the *1093 record of this court had to be consulted on the subject, and this necessitated its production. ' That this record included the proceedings in the lower court is evident, and that they included the verdict of the jury and the judgment of the lower court is equally evident. In this respect the testimony is unobjectionable and conforms to plaintiff’s plea.
As to the objection that only extracts from the record were offered, in lieu of a full and complete record, it only goes to the effect and not to the admissibility of the evidence. And an inspection of the certified extracts in evidence exhibit a full and complete record of the case on appeal, less the opinion of this court and one or two exhibits — the former appearing in the published reports, of which this court will take cognizance, and the latter being merely a matter of evidence, not determinative of the plea of res adjudieata. They contain the pleadings, minutes of court, finding of the jury and judgment thereon based, and the proceedings incident to an appeal to this court. These are all the essentials to an examination and decision of the plea of ?’es adjudieata. The objections were properly overruled.
It is manifest that the judgment and decree of this court, which is set up as res adjudieata, nécessarily embraces the verdict and judgment of the lower court as an essential and integral part thereof.
It was held in Beaird vs. Russ, 34 An. 315, that an appeal is not an independent suit, but an incident, merely, of the original suit, and the continuation of it.
The original suit in the lower court and the appeal are the same action without any substantial change.
In Shakspeare, Smith & Co. vs. Ware, 38 An. 570, it was held “ that the rule as to the verdict of the jury, like a judgment, is that it forms the authority of things adjudged upon all matters and demands set up in the pleadings.”
But the judgment of this court does not rest on the verdict of the jury, simply and alone, but upon a definitive judgment of the District Court, which was based upon the verdict of the jury. The judgment of this court dismissed the plaintiff’s appeal, because he had not cited the warrantors as appellees. Hence it was the result of this judgment of-dismissal, which put an end to the case, by leaving the judgment of the lower court in force. It would be impossible for this court to determine what force and effect are to be *1094 given to the judgment rendered without consulting the judgment that was appealed from. The plea of res adjudieata embraces the verdict of the jury and the judgment of the District Court thereon based; and in determining whether the bar of the judgment of this court is complete, same must be taken into consideration.
Looking into the opinion of this court in the case of Hickman vs. Bailey, 9 An. 485, we find the following statement of facts, viz.:
“The plaintiff claims the ownership of several tracts of land described as being situated on the Rigolet du Bon Dieu, in the parish of Natchitoches, under titles derived from the government of the United States. He alleges that the defendants have entered upon and taken possession of this land, and claim to be the owners of the same by virtue of a pretended title derived from Juan de Leen, which title they represent to be fraudulent and as never having been located by the proper authority under the government of the United States.
“The defendants, Bailey and Hughes, in answer, aver that they hold by good and valid titles derived, as to the defendant Hughes, from Littleton Bailey, who derived same from Juan de Leon, the grantee, under the Spanish government; that said grant was confirmed by the government of the United States, and was located by the officers thereof. They aver that they, purchased from their respective vendors in good faith and for a valuable consideration, and in case of eviction are, therefore, entitled to improvements, etc. * * * That the heirs of the late James Bowie are bound in warranty to them and pray that they may be accordingly cited, and in case of eviction that such judgment be rendered against said heirs in their favor as may be legal and just. The other defendants, Thomas and Wells, claim also under said Bailey.
“The heirs of Bowie being cited also joined issue and denied any liability as warrantors.
“The case was submitted to a jury in the court below and from the judgment rendered on their verdict in favor of defendants the plaintiff has appealed.”
The court coming to consider the case dismissed the appeal on the motion of appellee’s counsel, grounded on the plaintiff’s failure to cite the warrantors as appellees.
From the foregoing statement by the court it is evident that the issue in that case was, as it is in this, which is the better title to the land, the Juan de Leon grant or the certificate and patent of the *1095 United States — the land in controversy in this suit constituting an integral part of that involved in that suit.
There is no doubt of the fact that the Littleton Bailey who figures in the former casé as defendant is the same person who figures in the deeds which the plaintiff introduced in evidence, as the source of her title by inheritance; and there is likewise no doubt of the fact that the T. J. Hickman who is plaintiff in that suit is the ancestor of the warrantors, Hickman, in the instant case and the author of defendant’s title. It is likewise an undoubted fact that the title under which the plaintiff set up claim in the former case is the same identical patent and certificate from the United States government under which the defendant and warrantors claim in the instant case; and it is equally true and undoubted that the plaintiff in the instant suit claims under the same Juan de Leon grant that the de - fendants claimed under in the former case.
There can be no reasonable doubt or question of the efficacy and completeness of the bar of res adjudicata that is formed upon the judgment that was rendered in that case, if the plaintiff has properly connected herself with the Juan de Leon grant, in point of fact, as she has in allegation. And for this purpose it will be necessary for an investigation to be made as a means of ascertaining from the record what was the status of the title to the Juan de Leon grant at the time suit was brought on the 21st of December, 1845.
It appears from the record that Juan de Leon conveyed the land covered by his grant to James Bowie, on the 18th of December, 1818. That Bowie conveyed to Littleton Bailey, on December 1, 1832. That on the same date Bailey conveyed one-half interest to T. J. Wells; that on the 9th of February, 1838, T. J. Wells conveyed his one-half interest to J. M. Wells; that on the 8th of January, 1836, Juan de Leon executed an act of sale of the entire land to Littleton Bailey — the act reciting that the title he had executed to James Bowie on the 15th of December, 1818, to the same land “ has been declared null and void in consequence of informality.”
It also appears from the record that Juan de Leon executed a title to the same property to A. H. Adams, on the 26th of March, 1835— prior in date to his deed to Bailey, on the 8th of January, 1836. That Adams conveyed to Bynum on the 31st of March, 1835, and Bynum conveyed to J. M. Wells, on the 24th of February, 1838. That on the 25th of February, 1839, J. M. Wells executed a mort *1096 gage on the whole property in favor of the Canal Bank, and same was foreclosed and the property adjudicated to Elgee on the 23d of March, 1848. Thus it will be seen that, at date the suit of Hickman was filed, inl845, the title was either in J. M. Wells, who had derived title to part from T. J. Wells, or to the whole by a title from Bynum; or it was in Littleton Bailey and J. M. Wells, in joint ownership. The parties defendant in that suit were Littleton Bailey, Thomas J. Wells and John J. Hughes; and it was by the plaintiffs averred that the defendants were in possession, claiming ownership “by virtue of a certain pretended title derived from Juan de Leon, which petitioner avers to be fraudulent, and that it has never been located by the government,” etc; and judgment was prayed for against them, condemning them to deliver up the property.
The defendants, Bailey and Hughes, appeared and answered, and averred that they held good and valid titles to the property, “ derived, as to the defendant Hughes, from Littleton Bailey, who derived the same from and through the original grantee thereof from the Spanish government, to-wit: Juan de Leon.” And they further answered and averred that the title under which they claim “ is superior to that set up by the plaintiff. That the government of the United States had no right to dispose of the land by sale, if it is true that it did dispose of it.”
They further represent “ that James Bowie was bound to them in warranty, as the deeds filed herewith will show. That he is now deceased, and that his heirs are bound to them in warranty;” and they pray that they be cited in warranty — enumerating them and giving their places of residence.
Thomas J. Wells appears and answers by setting up a title derived from Littleton Bailey, and averring that the title under which Bailey holds is superior to that of the plaintiff — following, in substance, the answer of Bailey and Hughes. It was on these issues that the verdict of the jury was rendered in favor of the defendants, and thereon a final judgment was rendered, quieting them in their title and fully recognizing them as owners under the Juan de Leon grant — the judgment formally declaring “that said lands, thus decreed to the defendants, being so much of the land claimed in the patents set up in the plaintiff’s petition as are covered by and found within the limits of the Juan de Leon confirmation and location, as are represented on plats numbered 13 and 72, filed in this cause.”
*1097 In reply to the objections of plaintiff’s counsel to the motion to •dismiss the appeal the court employed this language, to-wit:
“ It appears that on the 1st of December, 1882, James Bowie conveyed to L. Bailey a tract of land, a part of which constitutes the subject matter of this litigation, for the price of two thousand dollars. The deed of sale contains the usual clause of warranty. But it is urged by the appellant that the heirs of Bowie have no real interest in the matter, and are not bound in warranty, and ought not to have been cited as such, inasmuch as the title relied upon by the defendants does not emanate from Bowie, but purports to come from Juan de Leon. In May, 1834, it appears that Bowie wrote to Juan de Leon, his vendor, that there existed some defect in the conveyance made to him in December, 1818, which he would discover from a copy which he sent, and requested him to renew the deed in favor of Bailey, the bearer of the letter, in such manner as should be satisfactory to both of them, which was done, de Leon stipulating the same price as that contained in his deed to Bowie. It is on this that the appellant relies to sustain his position. But it is far from being clear to our minds that this circumstance is entitled to produce the effect contended for, the extinguishment of the obligation of warranty of James Bowie, as vendor of Littleton Bailey. “Instead ■of lessening or impairing, it would seem to increase the warranty, •or to be an additional security bo the purchaser.” Or, in other words, the deed of Juan de Leon to L. Bailey in 1886 was, in effect, a confirmation of Bowie’s previous title to Bailey. It was not, in the opinion of the court, a new title intended to destroy the effect of de Leon’s previous conveyance to Bowie, but to make formal and effective the title he had conveyed to him in 1818. It had a direct tendency to defeat the title he had made to Adams in 1885.
On this theory both the plaintiff and defendants in that suit pro-needed; and that theory is perfectly reconcilable with the citation of Bailey and Wells as owners, and plaintiff’s failure to cite Adams ■or Bynum. It is consistent with the answers of the defendants and warrantors therein. This deed from Juan de Leon to L..Bailey being intended to correct an informality in the title of de Leon to Bowie, under whom Bailey held. But if it was a fact — a fact unknown and not recognized by these parties at the time — that the Adams-Bynum title was a better title than that of Bowie to the Juan de Leon grant, *1098 it passed subsequently through one of the defendants to the mother of the present plaintiff, though the judgment of the court, in the ease of Hickman vs. Sailey, did not take formal cognizance of it. The court passed upon and decided the main controversy, and held that the de Leon grant was a better evidence of title than the subsequent government patents; and we do not consider it of any importance that parties claiming under the Adams-Bynum title were not made parties, as they were evidently without interest, on the theory which was entertained by the court.
We do not, therefore, consider it important to discuss that question further in disposing of the plea of res adjudieata — the reference we have made to the title of either parties having been for the exclusive purpose of determining whether the plaintiff has properly connected herself with the Juan de Leon grant.
Finding that she has connected herself therewith we are of opinion that she is entitled to urge the plea of res adjudieata, and that the judgment rendered in the suit of Hickman vs. Bailey operates as a complete bar against the defendant and warrantors in the instant suit, as to the title they urge as adverse to the de Leon grant.
That judgment and decree fulfil, in our opinion, all the requirements of the Code, which are as follows, to-wit:
“ The authority of the thing adjudged takes 'place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.” R. C. C. 2286.
In Heroman vs. Institute, 34 An. 805, we said:
“Matters- once determined by a court of competent jurisdiction, if the judgment has become final, can never again be called in question by the parties or their privies.”
Again: “ It matters not under what form the question be presented, whenever the same question recurs between the same parties the plea of res adjudieata estops,” Sewell vs. Scott, 35 An. 553.
These authorities are quoted with approval in Broussard vs. Broussard, 43 An. 921, and are followed in the Tutorship of the Scarborough Minors, 44 An. 288.
On other issues of the case we are of opinion that the judgment appealed from is correct.
Judgment affirmed.
Rehearing refused.